(153 App. Div. 388.)

### NARDI v. RICHMOND LIGHT & R. CO.

(Supreme Court, Appellate Division, Second Department. November 27, 1912.)

1. APPEAL AND ERROR (§ 1026*)—ERRONEOUS RULINGS—REVIEW.

While the court on appeal will hesitate to set aside a verdict approved by the trial court as against the weight of evidence, though it believes that a different verdict would have been justified, it will carefully scrutinize the rulings at the trial and grant a new trial for error which might have been disregarded if the right of the prevailing party were clear.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4029, 4030; Dec. Dig. § 1026.*]

2. STREET RAILROADS (§ 113*)—COLLISIONS—EVIDENCE—ADMISSIBILITY.

Where plaintiff, suing for a personal injury in a collision between a street car and his vehicle, showed that the collision threw the horses down, and defendant showed that plaintiff drove his horses into the side of the car, that the pole of the wagon scraped the side of the car, that the horses were not thrown down, and that plaintiff did not fall from the wagon, evidence that there were no marks of injury on the horses was admissible on the credibility of the witnesses.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 229–238; Dec. Dig. § 113.*]

3. STREET RAILROADS (§ 99*)—OBLIGATION OF TRAVELERS.

A driver starting to cross street railway tracks where the company has the paramount right of way may not assume that the motorman will use reasonable care to keep the car under such control as not to run into his wagon, where he sees the car approaching rapidly, and there is nothing to indicate to him that the motorman is attempting to control the car.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 209–216; Dec. Dig. § 99.*]

4. STREET RAILROADS (§ 118*)—COLLISIONS—EVIDENCE—INSTRUCTIONS.

Where, in an action for injuries in a collision with a street car, the evidence was conflicting whether the motorman sounded his gong or not, but plaintiff testified that he saw the car approaching on the track, the refusal to charge that, in view of plaintiff's testimony, there was no negligence, though the jury believed that no gong was sounded, was erroneous, in the absence of a charge on that point, though the requested charge was subject to criticism.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 258–269; Dec. Dig. § 118.*]

5. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS.

Where, in an action for injuries in a collision between a street car and a vehicle at a point where the railroad company had the paramount right of way, the court merely charged that plaintiff was required to exercise greater care at such point than at a street intersection, the refusal to charge that plaintiff had no right to drive there without regard to the possibility of a collision was erroneous, because not covered by the instructions.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

6. TRIAL (§ 194*)—INSTRUCTIONS—INVASION OF PROVINCE OF JURY.

Where, in an action for injuries in a collision with a street car, plaintiff under his testimony was not entitled to a directed verdict, a requested instruction that, if the version of the collision testified to by plaintiff's witnesses was believed, the verdict might be for defendant, was erroneously modified by adding that the jury must in that case be-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lieve that plaintiff himself was guilty of contributory negligence, since the modification took from the jury the question of defendant's negligence as a question of fact.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

Appeal from Trial Term, Richmond County.

Action by Luiggi Nardi against the Richmond Light & Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

William H. Wadhams, of New York City (Frederick S. Fisher, of New York City, and Bertram G. Eadie, of New Brighton, on the brief), for appellant.

Francis F. Leman, of West New Brighton, for respondent.

BURR, J. Plaintiff has recovered a large verdict for personal injuries alleged to have been sustained by him on December 8, 1910, as the result of a collision between a car operated by defendant and a truck drawn by two horses driven by him. There was evidence that at some time previous to the date of the trial plaintiff had sustained a serious injury from some cause, that he was then suffering therefrom, and that such injuries were reasonably certain to be permanent. Defendant did not deny that there was a collision, and did not contradict the evidence as to plaintiff's condition at the time of the trial.

There was a sharp conflict of evidence upon three points, namely: Did plaintiff sustain any injury at the time of the collision? Was the collision due to negligence on the part of defendant? Did plaintiff show himself to be free from contributory negligence?

[1] From a perusal of the record we believe that a verdict for the defendant would have been justified; but as the learned trial justice, who had the advantage of hearing the evidence and seeing the witnesses, declined to set the verdict aside as against the weight of evidence, we should hesitate to do so. But in such a case we feel it to be our duty to carefully scrutinize the rulings made during the course of the trial, since the consequences of error in a closely contested case, such as this is, may be more serious than in a case where the right of the prevailing party is entirely clear. Our attention has been called to several alleged errors of the character referred to. Some of them may be disregarded upon the ground that they were not necessarily prejudicial. We shall consider five of the most important.

[2] Plaintiff's version of the occurrence may be summarily stated thus: On the morning of the day in question he was employed by one Nordzy to drive a team for him. Nordzy was a contractor engaged in removing snow from the public streets. When a wagon had been loaded with snow, it was taken to a field on the northerly side of a street known as Richmond Terrace, and there dumped. Defendant operated its railroad through said street. Plaintiff was engaged in this work from about 8 o'clock in the morning until 3 o'clock in the afternoon.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At that hour he had entered the field, dumped his load, and was passing out through an opening or gateway to cross defendant's track to the other side of the' street. The distance from the gateway to the nearest rail was about 9 feet. As plaintiff came through the gateway, he saw a car rapidly approaching and about 100 feet distant. He still proceeded, and, when the car was about 75 feet distant, he raised his hand and shouted. When he first saw the car, his horses were 8 or 9 feet from the rail, and, when he raised his hand, they were on the track and between the rails. He then tried to swing his horses to one side, but the front of the car struck the side of one of the horses and the front wheel of the wagon. Both of the horses were thrown down, one upon the other, and the harness was broken. Plaintiff was thrown from his seat on the wagon, struck his head against a trolley pole, and sustained the injury complained of. Two men called by him as witnesses came to his assistance and helped him to get up on the wagon, and he then started to return his team to the stable. He arrived there between 5:30 and 6 o'clock. He explains that the intervening time was spent by him in trying to find the stable of his employer. He there saw the man who employed him, who told him to put the horses in the barn. Only one of the witnesses above referred to and who came to his assistance claims to have seen the accident. He corroborates plaintiff's story in its essential features. The other witness did not see him until after the accident had happened. But both of these witnesses claim to have accompanied him to the stable, and one of them testified that he there saw his employer pay him.

Defendant called several witnesses, including four passengers on the car. The summary of their testimony was to the effect that plaintiff drove his horses into the side of the car after the front of the car had passed the gateway; that the pole of the wagon scraped the side of the car and struck the rear fender; that the horses were not thrown down; that plaintiff did not fall from his seat on the wagon, and none of the witnesses saw at the place of the accident either of the witnesses called by the plaintiff. Nordzy, his employer, was then called as a witness, and denied that plaintiff brought the team back on the evening of the day in question while he was present, or that he paid plaintiff his wages. He said that the team was already there when he returned to the stable. Connelly, Nordzy's foreman, who hired plaintiff, also denied that the latter brought the team back to the stable. He said that he found it abandoned in the street and brought it to the stable himself. He testified that one strap that holds the breeching up was broken, and that there was no other injury to the harness. Nordzy was asked by defendant whether any of his horses came back injured on the day in question. He answered "No, sir," while plaintiff was making his objection, and the court struck out the answer "as not being within the issues." When Connelly was being examined, he was asked whether the horses which he found in the street were in any way injured, and he answered, "No, sir; not as I see." Upon plaintiff's objection and motion to strike out, the court said, "Sustained," and defendant excepted. We think this testimony was competent. It is true, as urged by the plaintiff, that the action is not for injury to the

horses, but if it had occurred in the manner testified to by plaintiff and the horses had been thrown down, one upon the other, by the force of the collision, it is at least probable that they would have borne some marks of injury. The absence of any such mark was a circumstance which the jury were entitled to consider in determining the credibility of the respective stories of plaintiff and defendant.

At the close of the main charge, plaintiff's attorney presented the following request:

"I ask your honor to charge that the plaintiff had a right, in starting to cross this track, to assume that the defendant's motorman would use reasonable care to keep the car under such control as not to run into the plaintiff's wagon."

The court replied:

"I charge that, with the modification as I have already explained, that the railroad company at that point had the paramount right of way."

It is difficult to understand exactly what the modification related to, or what its effect was upon the request. The court in its main charge, at considerable length, had explained to the jury the respective rights of street railway companies and the drivers of vehicles at intersecting streets, and then added:

"I charge you, therefore, that at this point the rule of law which I have just stated as applicable to collisions occurring at intersecting streets does not apply, but the right of way of the defendant—that is, the railroad company—was superior to that of the plaintiff. That is, the defendant was not under a duty to exercise so much care as at street intersections, and the plaintiff was required to exercise a greater degree of care if he would escape the imputation of contributory negligence."

That is the sum of all that the court said in its main charge with regard to a railroad company's "paramount right of way."

[3] But it could not be said as matter of law, as the court instructed the jury, that plaintiff had a right in starting to cross the track to assume that the defendant's motorman would use reasonable care to keep the car under such control as not to run into his wagon, if the circumstances were, as detailed by the plaintiff, that the car was coming rapidly, and, so far as his evidence discloses, there was nothing to indicate that the motorman was attempting to control the same.

[4] Defendant then asked the court to charge that:

"In view of the testimony of the plaintiff that he saw the car approaching, there was no negligence on the part of the defendant, even if the jury believes that no bell was rung."

And the court said:

"I decline to charge other than as already charged on that point."

There had been a conflict of evidence as to whether the motorman had sounded his gong or not. The request is not above criticism. Doubtless what the defendant's attorney meant was that there was no actionable negligence for failure to ring a bell, if the plaintiff saw the car approaching, as he says that he did, some distance away, and

we think that the jury must have so understood it. The court had not in its previous charge instructed the jury upon that point.

[5] Defendant's attorney then presented the following request:

"I ask your honor to charge that the driver had no right to drive there without regard to the possibility of a collision between his vehicle and the car."

And the court again said:

"I decline to charge on that point except as already charged."

Except for the general statement above referred to, that the plaintiff was required to exercise a greater degree of care than at a street intersection, we can find no previous instruction given to the jury upon this point.

[6] Again, the defendant requested the court to charge in these words:

"I ask your honor to charge that, if the jury believes the version of the collision as testified to by the plaintiff's witnesses, their verdict may be for the defendant."

And the court said:

"I so charge, with the modification that the jury must, in that case, believe that the plaintiff himself was guilty of contributory negligence."

The effect of this modification was to take away from the jury the question of defendant's negligence as a question of fact. Unless at the close of plaintiff's case defendant had rested without introducing any evidence, and it then became the duty of the court to instruct the jury, as matter of law, that defendant was negligent, this ruling was erroneous. Considering that the testimony of plaintiff was that of an interested party, although to some extent corroborated by a disinterested witness, and in view of some contradictions and improbabilities contained therein which it is unnecessary and perhaps unwise here to detail, we conclude that plaintiff would not have been entitled to such a direction.

Because of these various errors, it seems to us clear that the defendant must have been prejudiced by the conduct of the trial, and we think that the judgment and order should be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., and THOMAS and CARR, JJ., concur; HIRSCHBERG, J., concurs in result.